**ACOM**
G. MARK ALBRIGHT, ESQ. (1394)
DANIEL R. ORMSBY, ESQ. (14595)
KYLE W. FENTON, ESQ. (16235)
**ALBRIGHT STODDARD, WARNICK & ALBRIGHT**
801 South Rancho Drive, Suite D-4
Las Vegas, Nevada 89106
T: (702) 384-7111 / F: (702) 384-0605
gma@albrightstoddard.com
dormsby@albrightstoddard.com
kfenton@albrightstoddard.com

MICHAEL MACHAT, Esq. CA Bar No. 109475
Appearing *pro hac vice*
MACHAT & ASSOCIATES, P.C.
8730 W. Sunset Blvd., Ste. 250
W. Hollywood, California 90069
Telephone: (310) 860-1833
michael@machatlaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT

## DISTRICT OF NEVADA

| | |
|---|---|
| Sonia Feldman, an individual | CASE NO.:   24-cv-00526 |
| Plaintiff, | DEPT. NO.: |
| vs. | |
| Mark Anthony Sawyer; Jennifer Ann Sawyer; Nevada MJS Trust; The Property Located at 6940 N. Jensen Street, Las Vegas, NV 89149-1365; The Property Located at 508 Setting Moon Street, North Las Vegas, NV 89084-1258; The Vacant Land located at APN# 125-19-203-002; ATD Commerce, LLC; ACM North, LLC; MAS Holdings Group, LLC.; and Sawyer Holdings, LLC, | **AMENDED COMPLAINT** |
| Defendants. | |

Plaintiff Sonia Feldman, an individual, by and through her counsel of record, ALBRIGHT, STODDARD, WARNICK & ALBRIGHT, and Michael Machat, appearing Pro Hac Vice, hereby submits her AMENDED COMPLAINT against Defendants as follows:

/ / /

**THE PARTIES AND SUBJECT MATTER JURISDICTION**

1. Plaintiff Sonia Feldman is a singer-songwriter and resides in West Hollywood, in Los Angeles, California.

2. Upon information and belief, Defendant Mark Anthony Sawyer ("Mark Sawyer") is a resident of Las Vegas, Nevada and resides at 6940 N. Jensen Street, Las Vegas, NV 89149-1365 ("the Jensen Property"). Defendant Mark Sawyer is being sued in this lawsuit in his capacity as Trustee or Co-Trustee of Defendant Nevada MJS Trust.

3. Mark Sawyer currently is a defendant in Case Number 23STCV26012 pending in Superior Court in LA County, in the case entitled Sonia Feldman v. Mark Anthony Sawyer, et al for breach of contract, open book account, and fraud and conversion relating to promissory notes signed by Mr. Sawyer for bridge loans where the notes remain unpaid and the money loaned was not used for the intended purpose. Mark Sawyer is being sued here in title only as Plaintiff seeks to recover the money Mark Sawyer stole from the assets he improved and/or acquired with Ms. Feldman's money.

4. Defendant Jennifer Ann Sawyer ("Jennifer Sawyer") is Defendant Mark Sawyer's wife and upon information and belief, lives with him at 6940 N. Jensen Street, Las Vegas, NV 89149-1365, and is Mr. Sawyer's partner in crime. Mrs. Sawyer is also a resident of Las Vegas, Nevada. Jennifer Sawyer is being sued herein both personally and as Trustee or Co-Trustee of Defendant Nevada MJS Trust. Jennifer Sawyer is not a defendant in the pending Los Angeles Superior Court lawsuit.

5. Defendant NEVADA MJS TRUST is, upon information and belief, a trust created by Defendants' Jennifer Ann Sawyer and Mark Anthony Sawyer to shield their assets, including the Jensen Property, the Setting Moon Property, and the Grand Canyon Lot from creditors seeking to recover monies the Sawyers fraudulently stole from them via a Ponzi scheme.

6. Defendant 6940 N. Jensen Street, Las Vegas, NV 89149-1365 ("Jensen Property"), according to public data available from PublicDataCheck.com consists of 9,071 square feet of indoor space with 6 bedrooms and 8 bathrooms on a 91,476 square foot lot.

7. Defendant 6508 Setting Moon Street, North Las Vegas, NV 89084-1258 ("Setting Moon Property"), according to public data available from PublicDataCheck.com consists of 2,863 square feet of indoor space with 4 bedrooms and 3 bathrooms.

8. Defendant Vacant Land located at APN# 125-19-203-002 situated near the intersection of Grand Canyon Drive and Deer Springs Way ("Grand Canyon Lot") is adjacent to Defendant Jensen Property.

9. Defendant ATD Commerce, LLC, ("ATD Commerce") is a Nevada limited liability company run and managed by Mark Anthony Sawyer.

10. Defendant ACM North, LLC ("ACM North") is a Nevada limited liability company managed by Mark Sawyer and created right around the time Plaintiff overnighted him, via FedEx, the check, referenced herein, for $1,166,337.13.

11. Defendant MAS Holdings Group, LLC ("MAS Holdings") is upon information and belief a Nevada limited liability company.

12. Defendant Sawyer Holdings, LLC ("Sawyer Holdings") is upon information and belief a Nevada limited liability company.

13. This Court has Diversity Jurisdiction pursuant to 28 U.S.C. §1332(a) because Plaintiff Feldman is a citizen of California while all the Defendants are citizens of Nevada, and the amount in dispute is well over $75,000. Venue is appropriate pursuant to 28 U.S.C. §1391 because Defendants reside and are based in Las Vegas, Nevada.

## GENERAL ALLEGATIONS

14. Defendant Mark Anthony Sawyer holds himself out as a financial genius who using so called "bridge loans" can double one's money in less than two years. He claims to have made a fortune with his bridge loan program which typically involves him persuading people to let him use their money for him to loan at high rates of interest to people and/or companies willing to pay high rates of interest for 90 days so they could use the money until they would be able to obtain money at normal rates of interest. In exchange for using his investor's monies, Defendant Sawyer promises to pay his investors a return ranging from 12% to 19% for just a 90-day period. At rates this high, one could double their money within a two-year period.

15. Defendant Mark Sawyer encourages all those who invested into his bridge loans to keep renewing their investments every ninety days. For years, if any of his investors asked to withdraw any part of their money instead of letting it renew, Mr. Sawyer would simply use other, newer investor's money to pay back the old investors.

16. At all relevant times, Defendant Jennifer Sawyer was aware of her husband's Ponzi scheme and helped prop up Mr. Sawyer as a financial genius. She did this through blog and video posts, falsely broadcasting online on YouTube and Facebook and elsewhere, that her husband was a financial genius knowing all the time he was a fraud. Jennifer propped up her husband's fraud so she could personally benefit from the money that he stole from others including the money he stole from Plaintiff Feldman.

17. Upon information and belief, Jennifer Sawyer was an active participant in Mr. Sawyer's fraud, participating in group meetings where various members of the fraud team, including the feeders, such as Charles Dunlap, Gaelen Whittemore, Elke Stephenson, Renee Dickenson, Henry Dickenson and others would meet up quarterly at the Jensen Property and discuss the progress of their criminal goals of enticing naïve investors to invest in Mr. Sawyer's Ponzi Scheme.

18. Both Mr. and Mrs. Sawyer recruit others (i.e., feeders) to bring other potential investors into the "bridge loan" program. Upon information and belief, as a reward, the Sawyers give the "feeders" a commission on the money brought in plus they give them each a Mercedes G-Wagons to drive.

19. Two of the feeders, Gaelen Whittemore and Domino Whittemore, seduced Plaintiff Feldman with tales of Mr. Sawyer's financial brilliance and helped con Ms. Feldman into giving Mr. Sawyer $1,176,337.13 to invest into his bridge loan program. They are defendants in the Los Angeles case referenced above in Paragraph 3.

20. Gaelen Whittemore, with behind the scene coaching from Mr. Sawyer, took advantage of Ms. Feldman's trust in him. Gaelen was her teacher and she had confided in him that she had spent a million dollars of her inheritance from her parents and was hoping to make it back somehow. The two feeders, Gaelen Whittemore and Domino Whittemore, pumped up Ms. Feldman with a wild story how Mark Sawyer could help her recover a million dollars she lost to others through bad decisions. So, in early 2021, the Whittemores introduced Ms. Feldman to Mark Sawyer, who supposedly would help her recover the million dollars she had lost.

21. But first they played it so Mark Sawyer was a hard man to get in touch with, and that she was one of the lucky ones who would get to work with him. By playing hard to reach, Mr. Sawyer was able to make the scam, however unbelievable it is to a rational person, that earning so much money by constantly rolling over high interest bridge loans was a great opportunity,

-4-

believable.

22. When Ms. Feldman eventually got to meet Mark Sawyer via Zoom for the first time, she was gushing with naïve enthusiasm. She believed it to be her lucky day. They met over zoom, and Mr. Sawyer assured her, he would get her the million dollars back that she lost and then start earning money on top of that, all through the use of a bridge loan program he made up.

23. Mark Sawyer promised to treat Sonia Feldman like his daughter and said that he would help her make the million dollars money she lost back, and then some on top. So struck by his apparent brilliance, she foolishly invested with him.

24. The first payment was for $10,000 on January 29, 2021, and the second payment was for $1,166,337.13 on April 30, 2021.

25. Over the next two years, Mr. Sawyer and his feeders had told Ms. Feldman that her investment had grown to approximately $3 million dollars. They had convinced her to simply roll her money over again every 90 days.

26. This went on for nearly two years, and then in the early summer of 2023, Ms. Feldman asked for just $200,000 of her money back. She was ready at that time to keep rolling the rest of the money into the bridge loans. However, the $200,000 was not forthcoming. Instead, Gaelen Whittemore, who acted as the gatekeeper to his wife, Domino Whittemore, who in turn acted as the gatekeeper to Mark Sawyer, started making up ridiculous stories such as Defendants' partner bank (Chase) restricted the amount of money that could be withdrawn at any one time due to the fact that Mark Sawyer had mistakenly done a deal with a couple of money-launderers. (That's not a mistake or misquote. Mark Sawyer repeatedly referred to Chase as his partner bank.)

27. After more time went by and still no money was forthcoming, Ms. Feldman then demanded to pull all her money out of the program.

28. No payments were made. Nor could any payments be made because rather than using the funds for making bridge loans to others at high interest rates, upon information and belief, Mr. Sawyer and his wife used the money for personal matters.

29. Upon information and belief, the money was misappropriated by Defendants long ago. The Sawyer defendants began spinning some yarns about Plaintiff's investment funds, that somehow got tied up with stories of money launderers, and they asked her to be patient.

30. Fortunately, Ms. Feldman woke up from her dreams and realized she most likely had

-5-

been scammed. As a result, Ms. Feldman brought the aforementioned lawsuit in Los Angeles for breach of contract, and then many others who also were victims of Mr. Sawyer started reaching out to Plaintiff's counsel, saying they too were conned, just like Ms. Feldman.

31. Ms. Feldman's counsel issued a subpoena to Mr. Sawyer's bank Chase, for Mr. Sawyer's bank records, and discovered that within two or three days of receiving Ms. Feldman's check for $1,166,337.13, Mr. Sawyer wrote checks for over one million dollars of that sum to the Vegas Auto Gallery, and $125,000.00 to Defendant ATD Commerce, LLC.

32. Upon information and belief, after Mark Sawyer stole Ms. Feldman's first investment of $10,000 and around the time when Ms. Feldman made her second investment of $1,166,337.13, both Mark and Jennifer Sawyer transferred title in the Defendant Jensen Property to Defendant Nevada MJS Trust in an attempt to shield the Defendant Jensen Property from Ms. Feldman's future collection efforts knowing that eventually she would come running for her money, once she realized she had been conned and duped.

33. Upon information and belief, after Mark Sawyer stole Ms. Feldman's first investment of $10,000 and around the time when Ms. Feldman made her second investment of $1,166,337.13, both Mark and Jennifer Sawyer transferred title in the Defendant Setting Moon Property to Defendant Nevada MJS Trust in an attempt to shield the Defendant Setting Moon Property from Ms. Feldman's future collection efforts knowing that eventually she would come running for her money, once she realized she had been conned and duped.

34. Upon information and belief, after Mark Sawyer stole Ms. Feldman's first investment of $10,000 and around the time when Ms. Feldman made her second investment of $1,166,337.13, both Mark and Jennifer Sawyer transferred title in the Defendant Grand Canyon Lot to Defendant Nevada MJS Trust in an attempt to shield the Defendant Grand Canyon Lot from Ms. Feldman's future collection efforts knowing that eventually she would come running for her money, once she realized she had been conned and duped.

35. Upon information and belief, the Defendant Nevada MJS Trust unjustly benefitted as a result of Mark Sawyer transferring Ms. Feldman's money, which was taken from her by fraud, lies, deceit and false pretenses, to the Nevada MJS Trust.

36. Upon information and belief, the Defendant Jensen Property unjustly benefitted as a result of Mark Sawyer using Ms. Feldman's money, which was taken from her by fraud, lies, deceit

-6-

and false pretenses, to improve and otherwise for the benefit of the Jensen Property.

37. Upon information and belief, the Defendant Setting Moon Property unjustly benefitted as a result of Mark Sawyer using Ms. Feldman's money, which was taken from her by fraud, lies, deceit and false pretenses, to improve and otherwise for the benefit of the Defendant Setting Moon Property.

38. Upon information and belief, the Defendant Grand Canyon Lot unjustly benefitted as a result of Mark Sawyer using Ms. Feldman's money, which was taken from her by fraud, lies, deceit and false pretenses, to improve and otherwise for the benefit of the Defendant Grand Canyon Lot.

39. Upon information and belief, the Defendant ATD Commerce unjustly benefitted as a result of Mark Sawyer transferring Ms. Feldman's money, which was taken from her by fraud, lies, deceit and false pretenses, to ATD Commerce.

40. Upon information and belief, the Defendant ACM North unjustly benefitted as a result of Mark Sawyer transferring Ms. Feldman's money, which was taken from her by fraud, lies, deceit and false pretenses, to ACM North.

41. Upon information and belief, the Defendant MAS Holdings unjustly benefitted as a result of Mark Sawyer transferring Ms. Feldman's money, which was taken from her by fraud, lies, deceit and false pretenses, to MAS Holdings.

42. Upon information and belief, the Defendant Sawyer Holdings unjustly benefitted as a result of Mark Sawyer transferring Ms. Feldman's money, which was taken from her by fraud, lies, deceit and false pretenses, to Sawyer Holdings.

43. Plaintiff is informed and believes that all the aforementioned conduct of Defendants was willful, oppressive, fraudulent, and malicious. Plaintiff is therefore entitled to punitive damages of at least three times the amount of money she was tricked into handing over to Defendants.

44. In each instance described below and herein above, Plaintiff conferred benefits on each of the named defendants in this case by writing two checks totaling $1,176,337.13 to Mark Sawyer which sum was supposed to be invested into bridge loans that paid high rates of interest up to 19% per quarter but was instead unlawfully diverted to and for the benefit of each of the defendants.

45. In each instance reference herein, Defendants retained the benefits of Ms. Feldman's money and have refused to return any part of it.

46. The circumstances described herein render Defendants retention of the monies inequitable unless Defendants pay back Ms. Feldman all the money that Mr. and Mrs. Sawyer took through fraud, lies and deceit. Ms. Feldman is thus entitled to all proceeds and benefits obtained by Defendants from the use of her money.

**FIRST COUNT**

**(UNJUST ENRICHMENT RE JENNIFER SAWYER)**

47. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 46 of this Complaint as though set forth in full herein at length.

48. Upon information and belief, Defendant Jennifer Ann Sawyer at all relevant times knew and/or should have known that her husband Mark Sawyer was running a Ponzi scheme stealing people's monies, including Plaintiff Ms. Feldman's money, and benefited from the bounty her husband obtained.

49. Instead, in this instant case, upon information and belief, the Sawyers used some of the $1.2 Million Dollars they stole from Sonia Feldman to open and improve a Yoga Studio, named Obsedian Yoga and to otherwise spend on frivolous luxuries, such as a Rolls Royce.

50. Defendant Jennifer Sawyer has unjustly benefitted from the use of Ms. Feldman's funds.

51. It would be inequitable for Defendant Jennifer Sawyer to retain the benefit of Ms. Feldman's funds for any purpose including for the benefit of the Obsedian Yoga Studio business and the purchase of a Rolls Royce.

52. Therefore, pursuant to the doctrine of Unjust Enrichment, all benefits of the use of Ms. Feldman's money inequitably received by Jennifer Sawyer should transfer to Ms. Feldman. In the alternative, Defendant Jennifer Sawyer should be ordered to repay Ms. Feldman the money she and her husband Mark Sawyer took from her via fraud, lies and deceit. Otherwise, it would be inequitable if Jennifer Sawyer was to retain the benefits of the use of the stolen funds.

/ / /

/ / /

## SECOND COUNT

## (UNJUST ENRICHMENT RE ATD COMMERCE)

53. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 52 of this Complaint as though set forth in full herein at length.

54. Upon information and belief, Mark Sawyer is the owner and manager of ATD Commerce.

55. Upon information and belief, instead of investing Ms. Feldman's money as promised into a bridge loan, Mr. Sawyer transferred to his company, Defendant ATD Commerce, the sum of at least $125,000.00.

56. The $125,000 received by ATD Commerce was Ms. Feldman's money, and ATD Commerce was no innocent party since being owned and managed by Mark Sawyer, was well aware of his unlawful activity.

57. Therefore, pursuant to the doctrine of Unjust Enrichment, ATD Commerce should be ordered to pay Ms. Feldman all the monies it received from Mark Sawyer, including the $125,000 Mr. Sawyer transferred to the ATD Commerce checking account just a few days after receiving Ms. Feldman's check for $1,166, 337.13. Otherwise, it would be inequitable if ATD Commerce were to retain the benefits of the use of the stolen funds.

## THIRD COUNT

## (UNJUST ENRICHMENT RE ACM NORTH)

58. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 57 of this Complaint as though set forth in full herein at length.

59. Upon information and belief, Mark Sawyer is the owner and manager of ACM North.

60. Upon information and belief, instead of investing Ms. Feldman's money as promised into a bridge loan, Mr. Sawyer transferred to his company, Defendant ACM North, some of the money he received from Ms. Feldman.

61. The money received by ACM North was Ms. Feldman's money, and ACM North was no innocent party since being owned and managed by Mark Sawyer, was well aware of his unlawful activity.

62. Therefore, pursuant to the doctrine of Unjust Enrichment, ACM North should be ordered to pay Ms. Feldman all the monies it received from Mark Sawyer, including all the money

Mr. Sawyer transferred to the ACM North checking account after receiving Ms. Feldman's check for $1,166, 337.13. Otherwise, it would be inequitable if ACM North were to retain the benefits of the use of the stolen funds.

### FOURTH COUNT

### (UNJUST ENRICHMENT RE THE JENSEN PROPERTY)

63. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 62 of this Complaint as though set forth in full herein at length.

64. Upon information and belief, Mark Sawyer and his wife used the funds they unlawfully stole from Ms. Feldman and used those funds to pay their monthly mortgage payment on the Jensen Property.

65. Therefore, pursuant to the doctrine of Unjust Enrichment, a percentage ownership interest of the Jensen Property should become Plaintiff's property, that percentage being a fraction defined by the numerator being all the mortgage payments made by the Sawyers since May 2021, when they conned Ms. Sawyer into writing a check to Mark Sawyer for $1,166,337.13 and the remaining balance due on the mortgage at the time of the theft. Otherwise, it would be inequitable if the Sawyers were to retain the benefit of Ms. Feldman's funds that they stole from her.

### FIFTH COUNT

### (UNJUST ENRICHMENT RE THE SETTING MOON PROPERTY)

66. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 65 of this Complaint as though set forth in full herein at length.

67. Upon information and belief, Mark Sawyer and his wife used the funds they unlawfully stole from Ms. Feldman and used those funds to pay their monthly mortgage payment on the Setting Moon Property.

68. Therefore, pursuant to the doctrine of Unjust Enrichment, a percentage ownership interest of the Setting Moon Property should become Plaintiff's property, that percentage being a fraction defined by the numerator being all the mortgage payments made by the Sawyers since May 2021, when they conned Ms. Sawyer into writing a check to Mark Sawyer for $1,166,337.13 and the remaining balance due on the mortgage at the time of the theft. Otherwise, it would be inequitable if the Sawyers were to retain the benefit of Ms. Feldman's funds that they stole from her.

## SIXTH COUNT

### (UNJUST ENRICHMENT RE THE GRAND CANYON LOT)

69. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 68 of this Complaint as though set forth in full herein at length.

70. Upon information and belief, Mark Sawyer and his wife used the funds they unlawfully stole from Ms. Feldman and used those funds to pay their monthly mortgage payment on the Grand Canyon Lot.

71. Therefore, pursuant to the doctrine of Unjust Enrichment, a percentage ownership interest of the Grand Canyon Lot should become Plaintiff's property, that percentage being a fraction defined by the numerator being all the mortgage payments made by the Sawyers since May 2021, when they conned Ms. Sawyer into writing a check to Mark Sawyer for $1,166,337.13 and the remaining balance due on the mortgage at the time of the theft. Otherwise, it would be inequitable if the Sawyers were to retain the benefit of Ms. Feldman's funds that they stole from her.

## SEVENTH COUNT

### (UNJUST ENRICHMENT RE MAS HOLDINGS GROUP, LLC)

72. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 71 of this Complaint as though set forth in full herein at length.

73. Upon information and belief, Defendant MAS Holding is the recipient of funds fraudulently obtained from Ms. Feldman by Mark Sawyer through Mr. Sawyer's fraud, lies and deceit. Upon information and belief, Mr. Sawyer transferred at least some of those unlawfully obtained funds to MAS Holdings for the benefit of MAS Holdings.

74. Therefore, pursuant to the doctrine of Unjust Enrichment, a percentage ownership interest of the MAS Holdings should become Plaintiff's property, and/or MAS Holdings should be ordered to repay Ms. Feldman the money that Mark Sawyer stole from Ms. Feldman, as it would be inequitable if MAS Holdings were to retain the benefits of the use of the stolen funds.

## EIGHTH COUNT

### (UNJUST ENRICHMENT RE SAWYER HOLDINGS, LLC)

75. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 74 of this Complaint as though set forth in full herein at length.

76. Upon information and belief, Mark Sawyer, with the assistance of his wife, Jennifer Sawyer, used the funds he unlawfully obtained from Ms. Feldman through fraud, lies and deceit and used those funds to pay money into and benefit Defendant Sawyer Holdings.

77. Therefore, pursuant to the doctrine of Unjust Enrichment, a percentage ownership interest of Defendant Sawyer Holdings should become Plaintiff's property, and/or Sawyer Holdings, LLC should be ordered to repay Ms. Feldman the money that Mark Sawyer with the assistance of his wife Jennifer Sawyer, unlawfully obtained from Ms. Feldman, as it would be inequitable if Sawyer Holdings, LLC were to retain the benefits of the use of the stolen funds.

## NINTH COUNT
### (UNJUST ENRICHMENT RE NEVADA MJS TRUST)

78. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 77 of this Complaint as though set forth in full herein at length.

79. Upon information and belief, Mark Sawyer, with the assistance of his wife, Jennifer Sawyer, used the funds he unlawfully obtained from Ms. Feldman through fraud, lies and deceit and used those funds to pay money into and benefit Defendant Nevada MJS Trust.

80. Therefore, pursuant to the doctrine of Unjust Enrichment, a percentage ownership interest of Defendant Nevada MJS Trust should become Plaintiff's property, and/or Sawyer Holdings, LLC should be ordered to repay Ms. Feldman the money that Mark Sawyer with the assistance of his wife Jennifer Sawyer, unlawfully obtained from Ms. Feldman, as it would be inequitable if Nevada MJS Trust were to retain the benefits of the use of the stolen funds.

## TENTH COUNT
### (FRAUDULENT CONVEYANCE RE THE NEVADA MJS TRUST)

81. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 80 of this Complaint as though set forth in full herein at length.

82. As stated above, the Sawyers transferred title to the Jensen Property to the Nevada MJS Trust right around the time they began to steal Ms. Feldman's money.

83. Upon information and belief, the Sawyers transferred the Jensen Property to the Nevada MJS Trust in an attempt to shield the Jensen Property from Ms. Feldman's reach once she awoke from Mark Sawyer's spell and realized she had been taken for a fool and gave a stranger

almost $1.2 Million Dollars based on his fraud, lies and deceit that he would recover the $1 Million Dollars she had previously lost due to his financial wizardry.

84. Fortunately, Ms. Feldman woke up to the scary facts that she gave her money to a con man while there was still time to recover her money.

85. Pursuant to NV Rev Stat § 112.180 (2022), Plaintiff requests that the transfer be deemed a fraudulent conveyance and that it be ignored so that Plaintiff can attach it to recover the money the Sawyers stole from Ms. Feldman in due course.

## ELEVENTH COUNT
### (AGAINST ALL DEFENDANTS FOR INJUNCTIVE RELIEF AND DAMAGES)

86. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 85 of this Complaint as though set forth in full herein at length.

87. Based upon Defendants' fraud, the Plaintiff seeks, under NRS 112.210, to enjoin Defendants from further disposition, transfer, or encumbrance of the Jensen Property, the Setting Moon Property, and the Grand Canyon Lot, until such time as Plaintiff's claims can be fully adjudicated hereunder, and, further Plaintiff hereby seeks, under NRS 112.210, a final order of injunction voiding, rescinding, and setting aside all transfers of the Jensen Property, Setting Moon Property, and Grand Canyon Lot from Mark Sawyer to the other Defendants, such that the Jensen Property, Setting Moon Property, and Grand Canyon Lot are returned to the name of Mark Sawyer in order that the Plaintiff may obtain interest in the properties described herein, once they are returned to the name of defendant Mark Sawyer, the original fraudulent transferor.

88. At all times mentioned herein, Defendants, and each of them, purposefully acted in an unlawful matter to wrongfully deprive the unsuspecting Plaintiff of her money. With this knowledge, defendant Mark Sawyer with the knowing aid and assistance of his co-conspirators, Jennifer Ann Sawyer, and all other defendants, named and unnamed, intentionally, willfully, fraudulently, and maliciously did the things herein alleged to defraud and oppress Plaintiff. Plaintiff is therefore entitled to exemplary punitive damages in an amount sufficient to punish Defendants, and each of them, and to deter future similar conduct, in an amount to be established according to proof at trial.

///

///

## TWELFTH COUNT

## (AGAINST ALL DEFENDANTS FOR CIVIL CONSPIRACY)

89. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 88 of this Complaint as though set forth in full herein at length.

90. Upon information and belief, Defendants conspired and agreed with each other to commit the actions at issue herein in concert with each other to hide, transfer, and accept the transferred Jensen Property, Setting Moon Property, and Grand Canyon Lot for the purpose of harming Plaintiff.

91. As a result of the Defendants' action described herein, Plaintiff has suffered damages in excess of $1,176,337.13 and is entitled to an award as and for her damages, together with interest accruing thereon at the highest rate allowed by law.

92. Plaintiff has been required to engage the services of an attorney to prosecute this matter and Plaintiff is entitled to her reasonable attorneys' fees and costs incurred in this matter, both as special damages, and pursuant to any contract term, statute, or rule, allowing the same.

93. At all times mentioned herein, Defendants, and each of them, purposefully acted in an unlawful matter to wrongfully deprive the unsuspecting Plaintiff of her money. With this knowledge, defendant Mark Sawyer with the knowing aid and assistance of his co-conspirators, Jennifer Ann Sawyer, and all other defendants, named and unnamed, intentionally, willfully, fraudulently, and maliciously did the things herein alleged to defraud and oppress Plaintiff. Plaintiff is therefore entitled to exemplary punitive damages in an amount sufficient to punish Defendants, and each of them, and to deter future similar conduct, in an amount to be established according to proof at trial.

## THIRTEENTH COUNT

## (FOR THE IMPOSITION OF A CONSTRUCTIVE TRUST AS TO ALL DEFENDANTS)

94. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 93 of this Complaint as though set forth in full herein at length.

95. Defendants, and each of them, including defendant Mark Sawyer as Trustee or Co-Trustee of Defendant Nevada MJS Trust, and Jennifer Ann Sawyer, both individually and as Trustee or Co-Trustee of Nevada MJS Trust, have been unjustly enriched by the fraud, misrepresentations, and wrongful retention of assets and equity requires the imposition of a constructive trust against

the Jensen Property, Setting Moon Property, and Grand Canyon Lot at issue herein, and against Nevada MJS Trust's purported interest therein in order to allow the same to be sold to pay off the debts of the fraudulent transferors due and owing the Plaintiff herein.

96. Plaintiff has been required to engage the services of an attorney to prosecute this matter and Plaintiff is entitled to her reasonable attorneys' fees and costs incurred in this matter, both as special damages, and pursuant to any contract term, statute, or rule, allowing the same.

97. At all times mentioned herein, Defendants, and each of them, knew that Plaintiff could seek to reclaim her money that Defendants wrongfully took from her when Plaintiff realized she had been a victim of fraud. The Defendants further knew that Plaintiff's claim could be satisfied out of the Mark Sawyer's ownership in the Jensen Property, Setting Moon Property, and Grand Canyon Lot. Notwithstanding this knowledge, defendant Mark Sawyer, with the knowing aid and assistance of his co-conspirators, Jennifer Ann Sawyer, and all other defendants, named and unnamed, intentionally, willfully, fraudulently, and maliciously did the things herein alleged to defraud and oppress Plaintiff by hindering and concealing their ownership of the property by transferring title to Nevada MJS Trust. Plaintiff is therefore entitled to exemplary punitive damages in an amount sufficient to punish Defendants, and each of them, and to deter future similar conduct, in an amount to be established according to proof at trial.

## FOURTEENTH COUNT
### (QUIET TITLE)

98. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 97 of this Complaint as though set forth in full herein at length.

99. Plaintiff is seeking to quiet title against the claims of the Defendant.

100. Plaintiff is entitled to a judgement quieting title against the Defendants in that the claims of the Defendants are without any right whatsoever and that Defendants have no right, title, estate, lien or interest whatsoever in the Jensen Property, Setting Moon Property, and Grand Canyon Lot.

101. Plaintiff seeks to quiet title in the Jensen Property, Setting Moon Property, and Grand Canyon Lot as against the Defendants named herein.

/ / /

/ / /

**PRAYER FOR RELIEF:**

WHEREFORE, Plaintiff prays for judgment as follows:

1. That the Court decree that Plaintiff is entitled to receive all the benefits unjustly enriched upon Jennifer Sawyer, Nevada MJS Trust, the Jensen Property, the Setting Moon Property, the Grand Canyon Lot, ATD Commerce, ACM North, MAS Holdings, and Sawyer Holdings, LLC.

2. That each of the conveyances of title from Mark Anthony Sawyer and Jennifer Ann Sawyer in the Jensen Property, in the Setting Moon Property and in the Grand Canyon Lot, to the Nevada MJS Trust be ruled a fraudulent conveyance and that title transfer instead to Plaintiff or be deemed null and void.

3. That title to each of the foregoing named defendant business entities and the property in their name be transferred to Plaintiff;

4. That in the alternative that defendants be ordered to pay the $1,176,337.13 Mark Sawyer, with the assistance of others, including Jennifer Sawyer, conned Plaintiff into investing into Mr. Sawyer's "bridge loans" Ponzi scheme.

5. That Defendants be prohibited from ever holding themselves out to the public as a financial advisor or loan agent and be prohibited from engaging in or working for any financial institution or loan agency ever again.

6. That the Court transfer title of the house located at 6940 N. Jensen Street, Las Vegas, NV 89149-1365 over to Plaintiff, pursuant to the doctrine of unjust enrichment;

7. That the Court transfer title of the property located at 6508 Setting Moon Street, North Las Vegas, NV 89084-1258 over to Plaintiff, pursuant to the doctrine of unjust enrichment;

8. That the Court transfer title of the house located at located at APN# 125-19-203-002 situated near the intersection of Grand Canyon Drive and Deer Springs Way over to Plaintiff, pursuant to the doctrine of unjust enrichment;

9. That the Court transfer title of other properties in the Defendants' names or in the names of Defendants' Trusts, over to Plaintiff pursuant to the doctrine of unjust enrichment;

-16-

10. Pending the determination of this action, that the Defendants, and each of them, be restrained and enjoined from further transferring, encumbering, or collecting or receiving, directly or indirectly, any of the rents, issues or profits from the Jensen Property, Setting Moon Property, and Grand Canyon Lot.

11. That the Defendant Mark Sawyer, and/or Defendant Jennifer Sawyer, as ostensible Trustee or Co-Trustee of Nevada MJS Trust, be ordered, upon such terms as may be equitable, to forthwith convey the Jensen Property, Setting Moon Property, and Grand Canyon Lot to and for the benefit of the Plaintiff, in order for Plaintiff to recover her loss, by means of recourse to the fraudulently transferred and conveyed Jensen Property, Setting Moon Property, and Grand Canyon Lot.

12. For punitive damages in an amount determined by a jury to punish Defendants for their wretched behavior;

13. For costs of suit herein incurred;

14. For Attorney's Fees;

15. For both pre-judgment and post-judgment interest as permitted by law;

16. For any other orders necessary to accomplish complete justice between the parties:

17. For such other and further relief as this Court may deem just and proper.

DATED this 29th day of May, 2024.

**ALBRIGHT, STODDARD, WARNICK & ALBRIGHT**

*/s/ Kyle W. Fenton, Esq.*

G. MARK ALBRIGHT, ESQ. (1394)
DANIEL R. ORMSBY, ESQ. (14595)
KYLE W. FENTON, ESQ. (16235)
801 South Rancho Drive, Suite D-4
Las Vegas, Nevada 89106
*Attorneys for Plaintiff*

Michael Machat, Esq.
California State Bar Number 109475
Appearing pro hac vice
8730 W. Sunset Blvd., Ste. 250
W. Hollywood, California 90069
Telephone: (310) 860-1833
Email: michael@machatlaw.com *Attorneys for Plaintiff*