G. MARK ALBRIGHT, ESQ. (1394)
DANIEL R. ORMSBY, ESQ. (14595)
KYLE W. FENTON, ESQ. (16235)
**ALBRIGHT STODDARD, WARNICK & ALBRIGHT**
801 South Rancho Drive, Suite D-4
Las Vegas, Nevada 89106
T: (702) 384-7111 / F: (702) 384-0605
Email: gma@albrightstoddard.com
Email: dormsby@albrightstoddard.com
Email: kfenton@albrightstoddard.com

MICHAEL MACHAT, ESQ.
California State Bar Number 109475
*Appearing pro hac vice*
8730 W. Sunset Blvd., Ste. 250
W. Hollywood, California 90069
T: (310) 860-1833
Email: michael@machatlaw.com

*Attorneys for Plaintiff*
*SONIA FELDMAN*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| SONIA FELDMAN, | Case Number: 2:24-cv-00526-JCM-MDC |
| Plaintiff, | **PLAINTIFF SONIA FELDMAN'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| MARK ANTHONY SAWYER, ET AL, | Date Action Filed:  March 18, 2024 |
| Defendants. | **ORAL ARGUMENT REQUESTED** |

Plaintiff Sonia Feldman, by and through her attorneys, hereby moves this Court for summary judgment against each defendant based upon the deemed admissions of the individual defendants Mark Sawyer and Jennifer Sawyer and based upon the failure of the non-individual defendants to appear with an attorney in contravention of this Court's Order dated December 20, 2024 [Dkt No. 36].

This motion is made and is additionally based upon the memorandum of points and authorities attached and filed herewith, the Declaration of Sonia Feldman, the Declaration of Michael Machat, the deemed admissions by defendants Mark Anthony Sawyer and Jennifer Ann Sawyer, all papers and pleadings on file herein, all exhibits attached hereto, and any oral argument the court may allow.

DATED this 6th day of March, 2025

ALBRIGHT STODDARD, WARNICK & ALBRIGHT

By://s// G. Mark Albright
G. MARK ALBRIGHT, ESQ. (1394)
DANIEL R. ORMSBY, ESQ. (14595)
KYLE W. FENTON, ESQ. (16235)
801 South Rancho Drive, Suite D-4
Las Vegas, Nevada 89106
T: (702) 384-7111 / F: (702) 384-0605
Email: gma@albrightstoddard.com
Email: dormsby@albrightstoddard.com
Email: kfenton@albrightstoddard.com

MICHAEL MACHAT, ESQ.
California State Bar Number 109475
*Appearing pro hac vice*
8730 W. Sunset Blvd., Ste. 250
W. Hollywood, California 90069
T: (310) 860-1833
Email: michael@machatlaw.com

*Attorneys for Plaintiff SONIA FELDMAN*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In October of 2023, Plaintiff Sonia Feldman filed a lawsuit against Mark Sawyer in the Los Angeles Superior Court, Case No. 23STCV26012 ("the Los Angeles case") seeking to recover her inheritance which Mark Sawyer stole from her. On August 9, 2024, the LA Superior Court issued a Judgment in Ms. Feldman's favor against Sawyer for $3,149,689.67. (Machat Decl. ¶2, Exhibit

S.)  At the time of filing the Los Angeles case, Plaintiff mistakenly believed Sawyer lived in California.

Upon determining Plaintiff actually was based and lived in Las Vegas, Ms. Feldman filed her complaint in this case,  seeking to recover the monies owed to her based on legal theories of unjust enrichment and fraudulent conveyance. Defendants have declined to participate in the litigation, probably because they have no valid defense.  Defendant Mark Sawyer conned Sonia Feldman out of her money while his wife, Defendant Jennifer Sawyer encouraged him and cheered him on.  All the defendants in this lawsuit were unjustly enriched from the monies Mark Sawyer stole from Ms. Feldman.  Additionally, the Sawyers fraudulently conveyed assets to Defendant MJS Nevada Trust, which was set up after they began wrongfully taking Ms. Feldman's inheritance.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

Most of this statement is taken verbatim from Judge Chalfant's findings in the Los Angeles Case, along with the Declarations and Exhibits submitted to Judge Chalfant. Judge Chalfant found:

"Feldman is a singer-songwriter. Feldman Decl[1]., ¶1. In November 2018, Feldman met Defendant Gaelen Whittemore in a songwriting class that Gaelen was teaching. Feldman Decl., ¶3. Over time, Gaelen became Feldman's teacher and mentor. After confiding in Gaelen that she had spent over a million dollars on paying others to assist with her musical career, Gaelen shared with Whittemore that she hoped to be able to make the money back one day. Feldman Decl., ¶3.

Gaelen then introduced Feldman to his wife, Domino. Feldman Decl., ¶4. The Whittemores then introduced Feldman to Sawyer, and the three Defendants explained to Feldman that she could participate in Sawyer's bridge loan program.

---

[1] The exhibits and exhibit numbers referenced by Judge Chalfant in his order are identical to the exhibits and exhibit numbers appearing in the accompanying declarations of Plaintiff Sonia Feldman and Michael Machat. The order and findings are attached as Exhibit U to the Machat Decl. ¶ 3

Feldman Decl., ¶4. Defendants said Feldman could recover the millions of dollars she previously lost through loaning money to Defendant Sawyer. Feldman Decl. ¶4.

After hearing Defendants' explanation how the bridge loan program worked, Feldman first transferred Sawyer $10,000 on or about January 29, 2021. Feldman Decl., Ex. C. In exchange for the funds, Feldman and Sawyer executed and signed a promissory note containing a provision promising Sawyer would pay Feldman $11,600.00 in return for the loan. Id. Sawyer's payment was due to Feldman on May 4, 2021.Id.

During the pendency of the promissory notes, Defendants encouraged Feldman to "roll the notes over" for additional promissory notes and Feldman did so. Feldman Decl., ¶9. Feldman continued to transfer funds for two years, the most recent promissory notes being signed in February and March of 2023. Feldman Decl. ¶10.

On February 17, 2023, Defendant Sawyer executed a promissory note for the sum of $22,089.50. Feldman Decl., F. This promissory note had a 95-day loan period, making Sawyer's payment due to Feldman on May 22, 2023. Id. Feldman provides a copy of this promissory note which appears to have been created with "DocuSign" and evidences Mark Sawyer's signature. Id.

Feldman was so enraptured by Defendants that she opted to sell her home so she could invest the $1,166,337.13 proceeds in the program. On April 30, 2021, Feldman invested these proceeds with Sawyer, who signed a promissory note with the same terms and 95-day turnaround as the January promissory note. Feldman chose to roll over the $1,387,941.18 promised under this April promissory note into a new promissory note on August 20, 2021. Under this promissory note, Sawyer promised to pay Feldman $1,554,235.30 on November 20, 2021.

All the Defendants knew that Feldman would never see the $1,176,337.13

- 4 -

she had transferred to Sawyer because they would keep convincing her to roll over the proceeds. Feldman continued to invest for approximately two years. In a promissory note dated February 17, 2023, Sawyer promised to repay Feldman $24,740.24 on May 22, 2023. This was the last promissory note in the series of rollovers from the $10,000 invested in January 2021.

"On March 10, 2023, Sawyer executed a promissory note for the sum of $2,812,595.14. Feldman Decl. Ex. E. This promissory note had 90-day loan period, making its payment date June 10, 2023. Like the February promissory note, the June promissory note also appears to have been drafted through "DocuSign" and evidences Sawyer's signature. Id.

All the promissory notes had a provision calling for payment to be made to Feldman without further notice, demand, or invoice from her. Feldman Decl., Exs. A-B, E-F. By the summer of 2023 and after Feldman requested for the first time that she collect a payment to which she was entitled, Defendants informed Feldman that she would have to wait because the $200,000 she was requesting was not available. Feldman Decl., ¶¶ 11-12.

After Feldman inquired further, Gaelen informed her that Sawyer's funds were held up in the bank because he did business with some people that were money laundering. Feldman Decl. ¶12, Exs. N-O.

Feldman then demanded to be repaid. When Defendants maintained they did not have the funds, Feldman retained an attorney, Michael Machat, Esq. ("Machat"). Machat Decl., ¶¶ 12-14.

In a conversation with Machat following October 23, 2023, Sawyer told Machat that his accounts were frozen due to his business transactions with individuals who were arrested for money laundering but that they should be unfrozen soon. Machat Decl., ¶5, Ex. Machat requested the names of the arrested individuals, but, Sawyer claimed the names were confidential. Id.

On January 8, 2024, Machat issued a subpoena duces tecum to JPMorgan Chase Bank to trace the funds transferred from Feldman to Defendant's account. Machat Decl., ¶8. On Sawyer's May 2021 bank statement shows that on May 7, 2021 Feldman's check was deposited into his bank account. Machat Decl., Ex. L. The next day, May 8, 2021, the funds tracing back to Feldman were used to write a check to the Vegas Auto Gallery for $925,000. Machat Decl., ¶9; Ex. L, check # 454. On May 17, 2021, Sawyer wrote check number 456 to the Vegas Auto Gallery for $100,000. Machat Decl. Ex. L. Sawyer made payroll payments of $10,763.04 and $11,166.42, on May 14, 2021 and May 18, 2021, respectively. Machat Decl., Ex. L. Sawyer also wrote checks in the amounts of $1,000,000, $500,000, and $200,000 to the Vegas Auto Gallery. Machat Decl., Ex. M. Two more checks in the sums of $1,000,000 and $500,00, show that Sawyer acquired an equity position in the Vegas Auto Gallery. The back of the checks show that Vegas Auto Gallery is the dba of Haute Auto Group LLC. Machat Decl., ¶11.

Sawyer's website for his business, MAS Financing, is Sawyer's money lending business, demonstrating he lends money in the capacity of a commercial lender. Machat Decl., ¶7.

Attorney Chadwick Johnson contacted Machat on January 17, 2024, and shared the same pattern of bridge loan lending followed by communications expressing that the funds are tied up with the banks but should be released soon. Machat Decl., ¶15-17, Ex. N. Machat has been contacted by Chadwick Johnson, Lakisha R. Washington, Bryant Hu, and Stephen S. Chang, each individuals and/or attorneys of individuals reporting similar experiences to Feldman. Machat Decl., ¶¶ 15-21. Exs. N-Q."

. . .

"Feldman has provided evidence of continued demands for payment. Machat Decl. Ex. D, G, and J. Sawyer's opposition argues on the merits that the

nature of his business activity with Feldman was bridge loans and the third party borrowers have Feldman's funds. Otherwise, Feldman's evidence shows that an auto business has her funds. Ex Parte Opp. at 5.

This argument is spurious. What Sawyer did with Feldman's money bears on her fraud claim[1] but not her breach of contract claim. She loaned money to Sawyer who did not repay it." Exhibit U to Machat Decl. ¶3

Since Judge Chalfant's ruling, Judge Anne Richardson, found similarly and granted summary judgment against defendant Mark Sawyer in the amount of amount of $3,149,689.67, plus costs, interest at the lawful rate of 10% and attorneys' fees pursuant to cost bill and motion. Machat Decl. ¶2, Exhibit S.  On December 6, 2024, Judge Michael Shultz subsequently awarded Ms. Feldman $81,000 in attorneys fees. Machat Decl. ¶2, Exhibit T.

Plaintiff has come to Las Vegas and filed a complaint in this case against entities controlled by Sawyer and his wife so that she can collect the monies Sawyer, with his wife's assistance, stole from her.  While the Los Angeles case was pending, Mark Sawyer told his investors he had inadvertently done money with a couple of money launderers and as a result the banks and the US government froze his accounts.  Machat Decl. ¶¶ 5, 34. Yet Mr. Sawyer of course has never identified who the money launderers were. *Id.* Since Ms. Feldman obtained her judgment, Mr. Sawyer has changed his story and now is telling his other victims that Ms. Feldman has frozen his accounts and is therefore unable to pay, but he is able to take in money for more bridge loans while his accounts are frozen. Incredibly, Mr. Machat learned that Mr. Sawyer is continuing with his wrongful behavior. Machat Decl. ¶ 34.

Some of his victims prefer to continue believing what Mr. Sawyer claims is true, perhaps because facing the truth would be devastating.  Other victims have gone to the FBI and the police in San Jose, where Sawyer held out his shingle.  Machat Decl. ¶ 22.

Other victims have filed lawsuits in the Santa Clara Superior Court of California against Mr. Sawyer all alleging a similar set of facts regarding his Ponzi Scheme. Below is a list of lawsuits

pending in the Santa Clara Courthouse where Sawyer has been sued for breach of contract and fraud among other claims stemming out of his Ponzi Scheme. Machat Decl. ¶ 24.

| Case Number: | Case Style: | Filing Date: |
|---|---|---|
| 24CV454757 | Clyde Berg et al vs Mark Sawyer et al | 12/23/24 |
| 24CV446394 | MAHESH JAMMALAMADAKA et al vs MARK SAWYER et al | 8/30/24 |
| 24CV443476 | Osprey Investment, Inc. vs Mark Sawyer as trustee of the Nevada MSJ Trust et al | 7/18/24 |
| 24CV441174 | John Mendonca vs Mark Sawyer et al | 6/13/24 |
| 24CV440547 | Shannon Baker Lopez et al vs Mark Sawyer et al | 6/4/24 |
| 24CV439988 | Glackin LLC vs Mark Sawyer et al | 5/28/24 |
| 24CV438771 | Danai Kietikul vs Mark Sawyer | 5/9/24 |
| 24CV437962 | Matthew Courtney vs Mark Sawyer et al | 5/2/24 |
| 24CV435888 | Dakendrick Goodman et al vs GOOGLE LLC | 4/15/24 |
| 24CV432850 | Thomas Cardinale vs Mark Sawyer et al | 3/11/24 |

Some of these lawsuits have multiple plaintiffs, and the second one above is a class action lawsuit. Besides these victims that have sued, since filing Ms. Feldman's lawsuit in Los Angeles, Plaintiff's counsel has received calls from approximately 30 other victims, each of whom detailed a similar set of facts. The victims have been from all sorts of life, from property developers to doctors, to schoolteachers, car mechanics, the elderly, and anyone with spare money, or in many cases, retirement assets, seeking an unheard of return on their investments. The victims Plaintiff's counsel has spoken to include Lakeesha Washington, Stephen Chang, Chadwick Johnson, Ana Arriaga, Asra Rahman-Firer, Charles and Robin Wood, and many, many others. Machat Decl. ¶ 23.

In the Northern District of California, a default judgment was issued against Mark Sawyer in Case No. 5:24-cv-01749-BLF entitled *Thayer v. Sawyer.* And finally, in the case of *Johnson v. D3 Investments, et al*, filed in this Court, Case No. 2:24-cv-00372-RFB-EJY, the Plaintiffs there alleged D3 Investments and Charles Duncan were feeders for Sawyer who took approximately $300,000 from them, and the defendants filed a cross-complaint against Mr. Sawyer claiming they too were duped by Sawyer. Sawyer's attorney Brent Bryson's request to withdraw from that case

was granted December 19, 2024, a day before his motion to withdraw from this case was granted. Machat Decl. ¶27.

Mark Sawyer was able to fleece so many people by recruiting others – perhaps naïve and unknowing of the scam themselves, to obtain other people's investments. Sawyer gave the feeders a three percent commission for bringing other people into the Bridge Loan Program. Machat Decl. ¶ 6, lines 10-11.

A month before Ms. Feldman brought her suit against Sawyer in the LA Superior Court, Sawyer's, assistant Renee Dickenson, sent a text to a list of over 25 feeders, repeating Sawyer's lies, and claiming:

"The authorities have filed charges against those responsible and under investigation over the past months. Please understand that there can be no details disclosed to us other than that. In light of that, we are asking you all to be calm and patient while they are moving forward so that a resolution for the rest of us is possible without any further delays." Feldman Decl. ¶ 15, Exhibits H and I.

There were so many victims who unfortunately just didn't do the math. The returns promised were not possible, just like the returns claimed by Bernie Madoff were not possible. Plaintiff's theory is Sawyer kept his scheme simple, just like Madoff. Whereas Madoff made no actual trades, Sawyer made no actual bridge loans. In discovery, Plaintiff demanded, amongst other things:

*25. Documents sufficient to show that You used the loan proceeds you received from Plaintiff for the intended purpose of making a bridge loan.*

*26. Documents sufficient to show that You used the loan proceeds you received from any person or company since 2021 for the intended purpose of making a bridge loan.* Machat Decl. ¶ 28.

No such documents were provided. *Id.* The discovery request was sent to defendants' attorney at the time, Brent Bryson on December 4, 2024. *Id.* No such documents exist, and Plaintiff surmises that is why Mr. Bryson asked to withdraw. He realized this was no simple collection

matter, but instead he unwittingly initially agreed to represent someone running a Ponzi Scheme. Defendants will not be able to produce documents that rebut the facts that (1) Sawyer is a conman; (2) that his wife, defendant Jennifer Sawyer was a key accomplice who bragged online and to others what a masterful businessman her husband was; and (3) that the Sawyers used Plaintiff's money without ever intending to make bridge loans as promised, but instead to live off the stolen loot. They moved their assets into the various defendant companies and defendant MJS Nevada Trust in an attempt to hide their assets from eventual judgment day.  They were insolvent at the time, since like all Ponzi schemes, it was impossible to pay everyone back. Instead, they took money from one victim to pay back an earlier victim.

Meanwhile, in January of this year, the California Commissioner of Financial Protection and Innovation filed two actions to revoke Mark Sawyer's Financing License and his Mortgage loan originator license. There was no response, and the Court issued Orders revoking the licenses. Machat Decl. ¶32, Exhibits Z1, Z2, Z3, and Z4.

The accusation to revoke the financing license noted, "*MAS Financing[2]  reported $6,844,980 in total assets on its 2023 annual report, while its unaudited balance sheet reflected total assets of $252,833, and its bank statement only reflected $2,064 in cash as of December 31, 2023.*" Machat Decl. ¶ 33. Of course, Sawyer defaulted because all the numbers were made up.

In this case, Plaintiff served document production requests, interrogatories and requests for admissions on both Mark Sawyer and his wife Jennifer Sawyer. These requests were served both upon the Sawyers' lawyer Brent Bryson while he was still representing them and the other defendants, and the requests for admissions and interrogatories were also served on Mr. and Mrs. Sawyer personally via email and via the US Post Office.  Machat Decl. ¶¶ 28-29. Defendants refused to answer the requests for admissions, Machat Decl. ¶¶ 29-31 and therefore the following facts are deemed to be admitted pursuant to FRCP 36.

---

[2] MAS Financing is Mark Sawyer's dba.

### III. ARGUMENT

**A.** **Mark and Jennifer Sawyer admit they operated a Ponzi scheme, they admit the MJS Nevada Trust was created in an attempt to prevent Sonia Feldman from recovering the monies they stole from her, and they admit all other facts to establish they and the MJS Nevada Trust were unjustly enriched and the creation of a MJS Nevada Trust was a fraudulent conveyance**

On December 19, 2024, Plaintiff sent a set of Requests For Admissions ("RFA") to defendant Mark Sawyer, a set of Requests for Admissions ("RFA") to defendant Jennifer Sawyer, and a set of interrogatories to each of them by sending each of the documents to them personally via both US Mail and email, and to their attorney of record at the time, Brent Bryson. [Machat Decl. ¶ 29. Prior to Mr. Bryson's request to withdraw as attorney was granted, Mr. Bryson told Plaintiff's attorney, Michael Machat, that he would inform the Sawyer's that they need to respond to the discovery requests, including their deficient production of documents. Machat Decl. ¶ 30. A copy of the Requests for Admissions propounded by Plaintiff on defendant Mark Sawyer and defendant Jennifer Sawyer is attached as Exhibits X and Y to the Machat Decl. ¶29.

There was no response to the admissions (Machat Decl. ¶31), and on January 21, 2025, the requests were deemed admitted pursuant to *Fed.R.Civ.P 36(a)(3)* which provides**:**

> A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney.

And Fed.R.Civ.P.36(b) provides

> A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended.

 Defendants have not filed a motion requesting that its admissions be withdrawn. So, for purposes of this motion for summary judgment,[3] defendant Mark Sawyer and defendant Jennifer Sawyer have admitted all of the following facts:

---

[3] The text of Rule 36(b) is permissive.   A district court is not required to grant relief when the moving party brings a motion. *Am. Gen. & Accident Ins. Co. v. Findley*, 2013 U.S. Dist. LEXIS

(a) At the time Defendants Mark and Jennifer Sawyer formed the MJS Nevada Trust, they were insolvent. (Mark Sawyer ("MS") RFA No.1 and Jennifer Sawyer ("JS") RFA No. 1, Exhibits X and Y.)

(b) At the time they formed the MJS Nevada Trust, they owed more money than they had available to pay out to all those who had bridge loans with Mark Sawyer if they all asked to withdraw their funds from their program. *Id.* (MS RFA No.2 and JS RFA No. 2).

(c) At the time they set up the MJS Nevada Trust, they were running a Ponzi scheme. *Id.* (MS RFA No.3 and JS RFA No. 3).

(d) They set up the MJS Nevada Trust so they could hide their assets. *Id.* (MS RFA No.4 and JS RFA No. 4.)

(e) Mark and Jennifer Sawyer set up the Nevada MJS Trust so they could shield their assets from Plaintiff in case she sued for the money Mark Sawyer agreed to pay her. *Id.* (MS RFA No.5 and JS RFA No. 5.)

(f) During the period from January 29, 2021, when Plaintiff Sonia Feldman wrote her first check to Mark Sawyer for $10,000 on January 29, 2021, through the end of 2021, Mark Sawyer was running a Ponzi scheme. Exhibit X, (MS RFA No.6), and Jennifer Sawyer was aware of it but made no attempt to stop him. Exhibit Y, (JS RFA No. 6) so she could benefit off Ms. Feldman's money to fund her lifestyle. (JS RFA No. 7.) *Id.*

(g) Mark Sawyer was using Plaintiff's monies to fund debts he owed others. (MS RFA No. 7.) Exhibit X.

(h) At the time Mark Sawyer obtained Plaintiff's check for $1,166,337.13, he and his wife were insolvent. Exhibits X and Y. (MS RFA No. 8 and JS RFA No. 8).

(i) At the time he received Sonia Feldman's check for $1,166,337.13 he was unable to pay all the debts that he owed. *Id.* (MS RFA No. 9 and JS RFA No. 9).

---

41644 *12 (CDCA 2013) citing *Conlon v. United States* 474 F.3d 616, 624 (9th Cir. 2007.) The text of Rule 36(b) is permissive. *Id.*

(j)    Instead of using the Plaintiff's check for $1,166,337.13 to make a bridge loan to others as Mark Sawyer represented, he instead used that money to partially fund the Vegas Auto Gallery. *Id.* (MS RFA No. 10 and JS RFA No. 10).

(k) Mark Sawyer lied to Plaintiff claiming her investment of over a million dollars would be used to make bridge loans. Exhibit X, (MS RFA No. 11.)

(l) Mark Sawyer told Ms. Feldman he would be able to more than double her money by using her money in his bridge loan program. *Id.* (MS RFA No. 12.)

(m)  At the time he made this promise, he and his wife knew it was a lie. Exhibits X and Y, (MS RFA No. 13 and JS RFA No 14.).

(n)  He knowingly lied when he promised to treat Ms. Feldman like his daughter to gain her trust so she would agree to invest over a million dollars into his bridge loan program. Exhibit X, (MS RFA No. 14, 15, 16, 17. )

(o) Once he had Ms. Feldman's money, Mark Sawyer repeatedly convinced her to roll over her investment while withholding the fact that he did not have the money to pay her if she had decided to withdraw her funds instead. *Id.* (MS RFA No. 18, 19.)

(p)  Defendant Jennifer Sawyer assisted her husband in his Ponzi scheme so she could benefit from the $1,176,337.13 Plaintiff invested with her husband. Exhibit Y, (JS RFA No. 11, 12.).

(q) Defendant Jennifer Sawyer was aware at all relevant times of her husband's Ponzi scheme and did nothing to prevent it so she could continue to live her lavish lifestyle. *Id.* (JS RFA No.15.)

(r) Mrs. Sawyer shared with her husband Mark, all the money Ms. Feldman entrusted to Mr. Sawyer. *Id.* (JS RFA No. 18.)

(s) Mrs. Sawyer was a partner in her husband's Ponzi scheme and continues to be so to this day. *Id.* (JS RFA No.19, 20, 21.)

(t) Mark and Jennifer Sawyer used Ms. Feldman's money to fund their lavish lifestyle. Exhibits X and Y, (MS RFA No. 20 and JS RFA No.22).

(u) Mark and Jennifer Sawyer formed the MJS Nevada Trust in order to prevent Ms. Feldman from recovering the money they cheated her out of. *Id.* (MS RFA No. 21 and JS RFA No. 23.)

Mark Sawyer's May 2021 checking account statement confirms he used Plaintiff Sonia Feldman's check for $1,166,337.13 for purposes other than intended. He bought cars. Machat Decl. ¶¶ 8- 14, Exhibits L, M, and U.

**B.    LEGAL STANDARD FOR MOTION FOR SUMMARY JUDGMENT.**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56.

For purposes of summary judgment, disputed factual issues should be construed in favor of the nonmoving party. *Lujan v. Nat'l Wildlife Fed.,* 497 U.S. 871, 888 (1990). However, to withstand summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

Here, the non-individual defendants have declined to participate in the litigation after their attorney withdrew, and the two individual defendants have refused to respond to requests to produce documents, respond to interrogatories, and most importantly for this motion, failed to respond to requests for admissions. So as discussed below in detail, the facts relevant to this motion for summary judgment have been admitted.

The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. See *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. See *Celotex*, 477 U.S. at 324.

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001).

**C.    The MJS Nevada Trust was created via a Fraudulent Conveyance and should be set aside.**

**1.    Legal Standard for a Finding of Fraudulent Conveyance.**

Under Nevada law, a transfer of assets can be considered fraudulent if it is made with the intent to hinder, delay, or defraud any creditor of the debtor, or if it is made without receiving reasonably equivalent value in exchange and the debtor was insolvent at the time or became insolvent as a result of the transfer *See* N.R.S. 112.180.

In the case of *Herup v. First Boston Financial, LLC,* the court emphasized that for a transfer to be deemed fraudulent under *NRS 112.180(1)(a),* there must be a determination that the debtor actually intended to hinder, delay, or defraud any creditor (*Herup v. First Boston Financial, LLC, 123 Nev. 228 (2007)).*

Additionally, in *Holland v. Anthony L. Barney, Ltd.,* the court explained that a fraudulent transfer claim involves a creditor asserting that a debtor transferred property with the intent to defraud the creditor by placing the property out of the creditor's reach (*Holland v. Anthony L. Barney, Ltd.*, 540 P.3d 1074 (2023))[4]. The court may void the transfer and return the title to the debtor or allow the creditor to levy execution on the asset transferred or its proceeds (*Holland v. Anthony L. Barney, Ltd.*, 540 P.3d 1074 (2023)).  The court will not uphold an agreement intended to delay or defraud creditors, even if it has elements of a trust *(Allison v. Hagan, 12 Nev. 38 (1877)).*

**2.    Mark Sawyer and Jennifer Sawyer have admitted all the elements of a fraudulent conveyance.**

In this case defendants have admitted they were insolvent and running a Ponzi Scheme. Defendants admitted that Mark and Jennifer Sawyer formed the MJS Nevada Trust in order to

prevent Ms. Feldman from recovering the money they cheated her out of. Essentially, they have admitted the crime.

As laid out above in the Statement of Undisputed Material Facts, and by his deemed admissions, Mark Sawyer has been running a Ponzi scheme for years, using his charm and character to convince unsuspecting victims that he could continuously invest their monies into bridge loans made to people or entities that were willing to pay extraordinary high rates of interest of up to 20% (or even more) for a 90 day period (i.e. at an APR of 80% or more) and by loaning Mark Sawyer, or one of his defendant entities, money he would share the proceeds with the victims, paying the victims ten to fifteen percent of the principal for a 90 day loan.[4] Then when the 90 days was up, Mark Sawyer, would either himself, or via his feeders, convince the victims to roll over their money again and again. As a result, many victims thought they had doubled or tripled or even quadrupled their principal investment when in fact, Mark Sawyer simply stole their money and used it to advance a lavish lifestyle for him, his wife Jennifer Sawyer, and the rest of his family. Knowing they were scamming Plaintiff, Defendants Mark Sawyer and Jennifer Sawyer set up the defendant Trust to hinder any collection efforts by Plaintiff.

Thus, the conveyance of all property to the MJS Nevada Trust, including the properties at 6940 N. Jensen Street, Las Vegas, NV 89194 and 6508 Setting Moon Street, Las Vegas, NV 89084 should be declared null and void.

**D.    The Defendants have been unjustly enriched.**

**1.    Legal Standard for Unjust Enrichment**

In Nevada, a claim for unjust enrichment is established when: (a) the plaintiff confers a benefit on the defendant; (b) the defendant appreciates such benefit; and (c) "there is acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." *Certified Fire Prot. Inc. v. Precision Constr.*, 128 Nev. 371, 283 P.3d 250, 257 (2012) (internal quotations omitted).

---

[4] A transcript of the smooth-talking Mark Sawyer convincing Ms. Feldman to part with the $1,166,337.16 from the sales of her house is attached to Ms. Feldman's Declaration as Exhibit R.

**2.  All the elements for a finding of Unjust Enrichment have been met.**

As discussed above, Defendant's Mark and Jennifer Sawyer have been running a Ponzi Scheme. Not only do the facts and circumstances of this case lead to such a conclusion, but they have admitted so.

They admitted they were insolvent and running a Ponzi Scheme.  Defendants admitted that Mark and Jennifer Sawyer formed the MJS Nevada Trust in order to prevent Ms. Feldman from recovering the money they cheated her out of.  Mark Sawyer admitted to lying to Sonia Feldman to obtain her money and Jennifer Sawyer admitted doing nothing to prevent the lies so she could continue living a lavish lifestyle. They both have admitted they used Ms. Feldman's money to fund their lavish lifestyle. (MS RFA No. 20 and JS RFA No.22).

Essentially, they have admitted the crime.

This is not a business deal gone wrong. It is a Ponzi Scheme, and therefore under these circumstances it would be inequitable for defendants to retain the benefit without payment of the value thereof.  Thus, a judgment should be entered against each defendant in the amount of at the very least, the $1,176,337.13 Sonia Feldman loaned to Mark Sawyer plus interest, costs and attorney's fees. (The contracts have an attorney's fees provision.)

**E.  A Default should be entered against MJS Nevada Trust and all of the corporate defendants for failure to appear with an attorney in contravention of this Court's Order dated December 20, 2024, [Dkt No. 36.]**

On December 20, 2024, the Magistrate wrote, "Defendants are cautioned that in federal courts, corporate entities may only appear through licensed counsel. *United States v. High Country Broad. Co*., *United States v. High Country Broad. Co*, 3 F.3d 1244, 1245 (9th Cir. 1993). Therefore, the corporate defendants must retain counsel and file a notice of appearance by new counsel on or before **February 20, 2025**. [Dkt No. 36]. Failure to do so will result in adverse consequences, including sanctions and judgment against such corporate defendants.

An individual trustee cannot represent a trust without counsel in court. According to the Supreme Court of Nevada, only a licensed attorney may represent a client in a court of law, and

this includes trusts. A trustee who is not an attorney cannot represent the trust in either district court or the Supreme Court, and trusts cannot proceed in proper person in the Supreme Court *(Salman v. Newell, 110 Nev. 1333 (1994))*. This principle is reinforced by the Nevada Supreme Court Rules, which state that only licensed attorneys may represent clients in court *(Supreme Court Rules, Rule 44.)*

**IV. CONCLUSION**

For the foregoing reasons, Plaintiff requests that her motion for summary judgment be granted as to each defendant.

DATED this 6th day of March, 2025

ALBRIGHT STODDARD, WARNICK & ALBRIGHT

By://s// G. Mark Albright
G. MARK ALBRIGHT, ESQ. (1394)
DANIEL R. ORMSBY, ESQ. (14595)
KYLE W. FENTON, ESQ. (16235)
801 South Rancho Drive, Suite D-4
Las Vegas, Nevada 89106
T: (702) 384-7111 / F: (702) 384-0605
Email: gma@albrightstoddard.com
Email: dormsby@albrightstoddard.com
Email: kfenton@albrightstoddard.com

MICHAEL MACHAT, ESQ.
California State Bar Number 109475
*Appearing pro hac vice*
8730 W. Sunset Blvd., Ste. 250
W. Hollywood, California 90069
T: (310) 860-1833
Email: michael@machatlaw.com

*Attorneys for Plaintiff SONIA FELDMAN*

- 18 -

## CERTIFICATE OF SERVICE

Pursuant to NRCP 5(b), I hereby certify that I am an employee of ALBRIGHT, STODDARD, WARNICK & ALBRIGHT and that on this 6th day of March, 2025, service of a true and correct copy of the foregoing **PLAINTIFF SONIA FELDMAN'S MOTION FOR SUMMARY JUDGMENT** was made to all counsel of record as follows:

MARK ANTHONY SAWYER
dba MAS Financing
6940 N. Jensen Street
Las Vegas, NV  89149-1365
*Defendant*

   X  Certified Mail
_____  Electronic Filling/Service
   X  Email
_____  Facsimile
_____  Hand Delivery
   X  Regular Mail

//s// *Phyllis L. Cameron*
An employee of Albright, Stoddard, Warnick & Albright