Michael Machat, Esq.
Machat & Associates, PC
California State Bar Number 109475
*Appearing pro hac vice*
8730 W. Sunset Blvd., Ste. 250
W. Hollywood, California 90069
Telephone: (310) 860-1833
Email: michael@machatlaw.com

G. Mark Albright, Esq. (1394)
Daniel R. Ormsby, Esq. (14595)
Kyle W. Fenton, Esq. (16235)
Albright Stoddard, Warnick & Albright
801 South Rancho Drive, Suite D-4
Las Vegas, Nevada 89106
T: (702) 384-7111 / F: (702) 384-0605
gma@albrightstoddard.com
dormsby@albrightstoddard.com
kfenton@albrightstoddard.com

Attorneys for Plaintiff
Sonia Feldman

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SONIA FELDMAN,<br><br>            Plaintiff,<br><br>       v.<br><br>MARK ANTHONY SAWYER, ET AL.,<br><br>            Defendants. | Case Number: 2:24-cv-00526-JCM-MDC<br><br>**PLAINTIFF SONIA FELDMAN'S SUPERSEDING MOTION FOR DEFAULT JUDGMENT** |

On February 27, 2026, the Clerk entered default against the defendants in this case. [ECF No. 54.] Plaintiff Sonia Feldman hereby moves for entry of default judgment against all of the defaulted  defendants; this motion supersedes Plaintiff's previously-filed request for default

- 1 -

judgment [ECF No. 49], which was prematurely filed, prior to the entries of default.

## I.    INTRODUCTION

Default judgment is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). The party must apply to the court for default judgment when it is necessary to "determine the amount of damages". Fed. R. Civ. P. 55(b)(2)(B).

Regarding the applicable procedure: "As the Ninth Circuit has clarified, Rule 55 requires a 'two-step process' consisting of: (1) seeking a clerk's entry of default, and (2) filing a motion for the entry of default judgment." *Argonaut Midwest Ins. Co., Plaintiff v. You Move We Move, Inc., et al., Defendants. Additional Party Names: Alfonso Perez-Garcia, Jose De Jesus Ibarra*, No. 2:25-CV-00376-CDS-NJK, 2026 WL 782438, at *1 (D. Nev. Mar. 19, 2026) (citing *Symantec Corp. v. Glob. Impact, Inc.*, 559 F.3d 922, 923 (9th Cir. 2009) & *Cramer v. Target Corp.*, 2010 WL 2898996, at *1 (E.D. Cal. July 22, 2010)).

The trial court has discretion to enter default judgment. *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980). When determining whether to enter a default judgment, the trial court should consider the seven factors articulated in *Eitel v. McCool,* 782 F.2d 1470 (9th Cir. 1986):

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72.

When applying the *Eitel* factors, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977); *see also* Fed. R. Civ. P. 8(d).

PLAINTIFF'S SUPERSEDING MOTION DEFAULT JUDGMENT

After Plaintiff filed a combined motion requesting both entry of default and default judgment [ECF No. 49], this Court ordered Plaintiff to first obtain entry of default from the clerk of the court; the Court would not consider Plaintiff's motion for default judgment unless and until the clerk entered default.  [ECF No. 50.]

On January 27, 2026, Plaintiff filed her request for entry of default [ECF No. 52], with a supplemental declaration in support filed on January 30, 2026. [ECF No. 53 .]  On February 27, 2026, the Clerk entered default against the following defendants: (i) MJS Nevada Trust, (ii) The Property Located at 6508 Setting Moon St., North Las Vegas, NV 89084-1258, ("Setting Moon Property"), (iii) ATD Commerce, LLC (iv) ACM North, LLC, (v) MAS Holdings Group, LLC, (vi) Sawyer Holdings, LLC, (vii) Mark Anthony Sawyer, and (viii) Jennifer Sawyer.  [ECF No. 54.]

Now that default has been entered, Plaintiff Sonia Feldman hereby files this motion for default judgment, which supersedes her previously-filed request for default judgment [ECF No. 49].

## II.    FACTUAL SUMMARY, FROM THE AMENDED COMPLAINT AND THE DEEMED ADMISSIONS

Plaintiff Sonia Feldman was conned by Defendant Mark Anthony Sawyer to invest $1,176,337.13 into his supposed bridge loan program.  Amended Complaint ¶¶ 14 – 24 [ECF No. 12] ("AC").  The purported bridge loan program turned out to be nothing but a Ponzi Scheme, and Sawyer's wife (Defendant Jennifer Sawyer) played a key role falsely touting her husband as a financial genius while knowing all the time that he was a fraud.  Amended Complaint ¶¶ 16, 17. Rather than investing Ms. Sawyer's money, two days after receiving the second check for $1,166,337.13, he wrote checks to the Vegas Auto Gallery for a total of over one million dollars and $125,000.00 check to Defendant ATD Commerce, LLC.  Amended

Complaint ¶ 31.

After Ms. Feldman made her first investment (in the amount of $10,000) and around the time that she made her second investment (in the amount of $1,166,337.13), both Defendants (i.e., Mark and Jennifer Sawyer) transferred title in their real estate holdings (including Defendant Setting Moon Property) into Defendant MJS Nevada Trust, in an attempt to shield their assets from Ms. Feldman's anticipated subsequent efforts to recoup the money that had been stolen from her (once Ms. Feldman realized she had been duped).  Amended Complaint ¶¶ 32 – 34.  All the Defendants, including the MJS Nevada Trust, unjustly benefitted as a result of Mark Sawyer's theft made with the assistance of his wife Jennifer Sawyer. Amended Complaint ¶¶ 35 – 46.

Mark and Jennifer Sawyer were each served requests for admissions on December 19, 2024, regarding the facts stated above and in the complaint. They each failed to deny any of the requests for admissions; and, pursuant to Fed. R. Civ. P. Rule 36(a)(3), each of the requests have been deemed admitted, including the admissions that the Sawyers were running a Ponzi Scheme. (*See* ECF No. 37-2 (Machat Decl.) at ¶¶ 29-31; ECF No. 37-26 (Requests for Admissions to Mark Sawyer) and ECF No. 37-27 (Requests for Admissions to Jennifer Sawyer).) Notably, both Defendant Sawyers, husband and wife, admitted that they formed the MJS Nevada Trust in order to prevent Plaintiff from recovering the money they cheated her out of. Jennifer Sawyer admitted she was a partner in her husband's Ponzi Scheme.  (*See* ECF No. 37-26 at RFA No. 21 and ECF No. 37-27 at RFA Nos. 19 – 23.)

**III.    Application of the *Eitel* Factors Supports Entry of Default Judgment**

Each of the *Eitel* factors (identified above) weighs in favor of judgment here.

*1. Plaintiff Will Be Prejudiced Absent Default Judgment*

The first *Eitel* factor considers whether denying default judgment would prejudice the

- 4 -

plaintiff. Here, the prejudice is clear and significant. Plaintiff Sonia Feldman has already obtained a judgment in California against Mark Sawyer personally, establishing that Mark Sawyer has not returned the $1,166,337.13, identified in the Amended Complaint. That adjudication confirms the legitimacy of her underlying claims, but it does not by itself provide relief against Jennifer Sawyer, the MJS Nevada Trust, or the Nevada corporate entities that Sawyer used to receive and dissipate her funds.  Those defendants are now in default, with default having been entered by the Clerk of this Court on February 27, 2026.  The prejudice is therefore twofold. First, Plaintiff remains unable to reach assets that were funneled through these defaulting defendants, despite having already secured a $3.149,689.67 million judgment[1] against Sawyer himself. Second, delay allows these defaulting defendants to continue to evade accountability while assets risk being dissipated beyond her reach. Absent default judgment, Plaintiff is left in precisely that position: with a proven loss, a judgment against the individual wrongdoer, and no mechanism to hold his controlled entities and other defendants to account.

### 2. The Merits of Plaintiff's Substantive Claims Strongly Favor Judgment

The second *Eitel* factor considers the merits of the plaintiff's substantive claims. Plaintiff's claims here are not speculative. They rest on detailed factual allegations that are both well-pleaded and corroborated by a prior judgment in her favor. In August of 2024, the Superior Court of California entered summary judgment against Mark Sawyer for $3,149,689.67. That judgment was entered by summary judgment, which represents a judicial determination that Sonia's allegations were sufficiently supported to warrant a binding award of damages. It also establishes that Plaintiff's losses are real and quantifiable, not conjectural.

---

[1] At the time the Amended Complaint was filed, the case entitled *Sonia Feldman v. Mark Anthony Sawyer*, bearing case number 23STCV26012, was pending in the Los Angeles Superior Court. Summary Judgment subsequently issued against Mark Sawyer in that case in the amount of $3,149,689.67 plus costs, interest and attorney's fees.  [ECF No. 37-2, Machat Decl. ¶ 2, Exhibit S.] Jennifer Sawyer, the MJS Nevada Trust and the other defaulting defendants in this case (besides Mark Sawyer) were not defendants in the Los Angeles case.

PLAINTIFF'S SUPERSEDING MOTION DEFAULT JUDGMENT

The claims against the defaulting defendants are a natural extension of that adjudication. The Amended Complaint alleges that Sawyer funneled Plaintiff's inheritance into these entities and then used them to disguise his misappropriation. Bank records and supporting declarations reflect substantial transfers into corporate accounts, followed by expenditures on personal luxuries rather than the promised investments. Thus, the California judgment reinforces the core factual predicate: Sonia's inheritance was fraudulently misappropriated.

Against that backdrop, the claims for fraudulent transfer, unjust enrichment, and alter ego liability against the Nevada entities are meritorious. In Plaintiff's March 6, 2025 summary judgment motion in this court [ECF. No. 37], Plaintiff has submitted sworn declarations and bank records showing that her inheritance was transferred into accounts tied to these entities and then spent on personal expenditures rather than legitimate investments. Because no opposition was filed, those facts may be treated as undisputed. *See* Fed. R. Civ. P. 56(e). Together with the California judgment confirming her loss, the uncontested record demonstrates that Sonia's claims are well-founded and weighs strongly in favor of default judgment.

### 3. The Sufficiency of the Complaint Supports Default Judgment

Courts evaluating the third *Eitel* factor look to whether the allegations in the complaint, taken as true upon default, establish a legitimate basis for liability. Plaintiff's Amended Complaint easily meets that standard. [ECF No. 12.] It describes, in detail, how Sawyer persuaded Plaintiff to entrust more than $1 million of her inheritance to him, how Jennifer Sawyer was his accomplice and was fully aware of the Ponzi Scheme, and how the corporate defendants were created and used to receive, move, and conceal those funds. Each of the entities—MJS Nevada Trust, ATD Commerce, ACM North, MAS Holdings Group, and Sawyer Holdings—is identified and tied to Sawyer's scheme, either through formation at the time Sonia's money was taken or through their role in holding assets acquired with misappropriated funds.

PLAINTIFF'S SUPERSEDING MOTION DEFAULT JUDGMENT

The Amended Complaint also pleads specific causes of action directly against Jennifer Sawyer, and each of the corporate defendants. It alleges unjust enrichment, asserting that entities such as Sawyer Holdings and the MJS Nevada Trust received and retained benefits traceable to Sonia's inheritance without lawful justification. It alleges fraudulent transfer, pointing to the movement of real property and cash into the MJS Nevada Trust at the same time Sawyer began diverting Sonia's money. It further seeks equitable relief to prevent these entities from continuing to shield the proceeds of the fraud. These claims, supported by detailed factual allegations, are sufficient on their face to establish liability if uncontested.

Taken together, the allegations in the Amended Complaint provide a coherent and well-supported description of how Sonia's inheritance was misappropriated and funneled into the corporate defendants. In the default posture, those allegations are accepted as true, and they are more than adequate to sustain judgment against the defaulting parties. This factor therefore weighs strongly in favor of entering default judgment.

### 4. The Sum of Money at Stake Is Substantial and Justified

The fourth *Eitel* factor considers the amount of money at stake relative to the claims. The sum here—over $1.1 million—is substantial, and it is neither arbitrary nor speculative. It represents the proceeds of Sonia Feldman's inheritance that Mark Sawyer diverted, and it matches the checks written and cashed by Mark Sawyer – and is actually far less than the amount awarded in the California Superior Court in a judgment against him personally.[2] In other words, the amount is not a new or untested figure; it is the precise amount of money Sonia had invested with Mark Sawyer.

---

[2] After investing first $10,000 and then later $1,166,337.13, that were documented in written contracts with three-month terms, the contracts were repeatedly renewed for additional three-month terms, so at the time the Los Angeles case was decided the contractual debt was approximately $3 Million Dollars. Here, since the complaint is not for breach of contract, as it was in the Los Angeles case, Plaintiff is seeking just the combined sum of the two investments - $1,176,337.13, which is the amount requested in the Amended Complaint.

### 5. *There Is No Possibility of a Genuine Dispute of Material Fact*

The fifth *Eitel* factor also supports entering default judgment because there is no realistic possibility of a material factual dispute. The defendants have not appeared through counsel since December 2024 and are in default.  Their failure to participate means there is no competing evidence in the record to contest Plaintiff's well-pleaded allegations. Moreover, Plaintiff's Motion for Summary Judgment was filed with sworn declarations and supporting exhibits and has gone entirely unopposed, leaving those facts unrebutted. [ECF. No. 37.]  In this posture, the record contains no basis for a factual dispute, and the allegations may be taken as true for purposes of default judgment.

### 6. *The Defendants' Default Was Not the Result of Excusable Neglect*

The sixth *Eitel* factor asks whether the default was the product of excusable neglect. It plainly was not. The Court's December 20, 2024 Order gave the defendants clear instructions, and they were expressly warned that failure to do so could result in "sanctions, including judgment." [ECF No. 36.]  Despite that warning and the more than 15 months having elapsed since that order was entered, the record demonstrates the defendants' deliberate decision to abandon any defense rather than any inadvertence, mistake, or miscommunication. Under these circumstances, default judgment is the predictable result of willful disregard, not excusable neglect.

### 7. *Although Courts Favor Decisions on the Merits, This Policy Does Not Preclude Default Judgment*

The final *Eitel* factor acknowledges the strong policy favoring resolution on the merits. But that policy presumes that defendants will appear and participate in the litigation. Here, the defaulting defendants have made that impossible. By failing to comply with the Court's order to obtain counsel and by abandoning their defense altogether, they have foreclosed any opportunity for the case to be decided on its merits. As the Ninth Circuit has recognized, "the preference to decide cases on the merits does not preclude a court from granting default judgment when the

adversary process has been halted by a defendant's failure to participate." *Eitel, supra*, 782 F.2d at 1472. Because the corporate defendants have chosen not to defend, default judgment is not inconsistent with this policy; it is the only mechanism available to prevent indefinite delay and ensure that Plaintiff's claims are resolved.

**D.    The *Frow* Rule Does Not Preclude Entry of Default Judgment Here**

In *Frow v. De La Vega*, 82 U.S. 552 (1872), the Supreme Court held that default judgment should not be entered against one defendant when others alleged to be jointly liable remain in the case, to avoid inconsistent outcomes. The Ninth Circuit has extended this principle to "similarly situated" or "closely related" defendants, holding that default judgment is improper where it would directly conflict with rulings in favor of non-defaulting parties. *In re First T.D. & Inv., Inc.,* 253 F.3d 520, 532–33 (9th Cir. 2001).

That concern does not apply here. The corporate defendants' liability is not independent of Sawyer's; it is derivative of his fraud, which has already been judicially confirmed in California through a $3.1 million judgment. The Amended Complaint alleges, and bank records show, that these entities were used as conduits for Sawyer's scheme—as vehicles through which he received and dissipated Sonia's inheritance. Their failure to obtain counsel and subsequent abandonment of the case leave those allegations uncontested. Meanwhile, no individual defendant has advanced any defense on the merits that could produce a conflicting outcome. Unlike in *First T.D.,* where default judgments contradicted a merits ruling in favor of other defendants, there is no risk of inconsistency here: a judgment against the corporations would merely extend liability to the entities Sawyer controlled, consistent with the already-established fraud. To the contrary, delaying judgment would only prolong Sonia's inability to recover her inheritance while rewarding the defendants' defiance of this Court's order. Accordingly, entry of default judgment against the corporate defendants is not only consistent with *Frow,* it is necessary to ensure fairness and efficiency in resolving this case.

PLAINTIFF'S SUPERSEDING MOTION DEFAULT JUDGMENT

## IV.  CONCLUSION

This Motion is supported by the record, and applicable legal authority. The *Eitel* factors, Rule 55, and controlling precedent all support entry of default judgment. Plaintiff therefore respectfully requests that the Court enter default judgment against the defendants.

**WHEREFORE**, Plaintiff respectfully requests that the Court:

1.  Enter judgment against Jennifer Sawyer for $1,176,337.13, plus costs and statutory interest and attorney's fees (as applicable.)

2.  Enter judgment against MJS Nevada Trust, for $1,176,337.13, plus costs and statutory interest and attorney's fees (as applicable.)

3.  Enter judgment against the Property Located at 6508 Setting Moon St., North Las Vegas, NV 89084-1258 for $1,176,337.13 plus costs and statutory interest and attorney's fees (as applicable.)

4.  Enter judgment against ATD Commerce, LLC, for $1,176,337.13 plus costs and statutory interest and attorney's fees (as applicable.)

5.  Enter judgment against ACM North, LLC, for $1,176,337.13 plus costs and statutory interest and attorney's fees (as applicable.)

6.  Enter judgment against MAS Holdings Group, LLC, for $1,176,337.13 plus costs and statutory interest and attorney's fees (as applicable.)

7.  Enter judgment against Sawyer Holdings, LLC, for $1,176,337.13 plus costs and statutory interest and attorney's fees (as applicable.)

8.  Enter judgment against Mark Anthony Sawyer for $1,176,337.13 plus costs and statutory interest and attorney's fees (as applicable.)

9.  Rule and declare that the real properties transferred into the MJS Nevada Trust (i.e., the Property Located at 6940 N. Jensen Street, Las Vegas, NV 89149-1365

PLAINTIFF'S SUPERSEDING MOTION DEFAULT JUDGMENT

and the Property Located at 508 Setting Moon Street, North Las Vegas, NV 89084-1258) were fraudulently conveyed and, therefore the conveyances are a nullity.

Respectfully submitted,

DATED this 23rd day of March 2026

**Machat & Associates, PC**

By: /s/Michael Machat
Michael Machat
Appearing pro hac vice
California State Bar Number 109475
8730 W. Sunset Blvd., Suite 250
W. Hollywood, CA 90069
Attorneys for Plaintiff Sonia Feldman

G. Mark Albright, Esq. (1394)
Daniel R. Ormsby, Esq. (14595)
Kyle W. Fenton, Esq. (16235)
Albright Stoddard, Warnick & Albright
801 South Rancho Drive, Ste D-4
Las Vegas, Nevada 89106
T: (702) 384-7111 / F: (702) 384-0605
gma@albrightstoddard.com
dormsby@albrightstoddard.com
kfenton@albrightstoddard.com

- 11 -

## CERTIFICATE OF SERVICE

Pursuant to NRCP 5(b), I hereby certify that on this 23rd day of March 2026, I mailed a copy of the foregoing motion to each defendant at the addresses listed below.

DATED this 23rd day of March 2026

**Machat & Associates, PC**

By: /s/Michael Machat

MARK SAWYER
6940 N. Jensen St,
Las Vegas, NV 89149
Email: msawyer2729@yahoo.com

JENNIFER SAWYER
6940 N. Jensen St,
Las Vegas, NV 89149
Email: jen61002@hotmail.com

MJS NEVADA TRUST
6940 N. Jensen St,
Las Vegas, NV 89149

THE PROPERTY LOCATED AT:
6508 Setting Moon Street
North Las Vegas, NV 89084-1258

ATD COMMERCE, LLC.
C/o US CORPORATE SOLUTIONS, LLC
2685 S. Rainbow Blvd., Suite 213
Las Vegas, NV 89146

ACM NORTH, LLC.
C/o US CORPORATE SOLUTIONS, LLC
2685 S. Rainbow Blvd., Suite 213
Las Vegas, NV 89146

MAS HOLDINGS GROUP, LLC.
C/o US CORPORATE SOLUTIONS, LLC
2685 S. Rainbow Blvd., Suite 213
Las Vegas, NV 89146

SAWYER HOLDINGS, LLC
C/o JEFFREY BURR, LTD.
2600 Paseo Verde Pkwy., Suite 200
Henderson, NV 89074

- 12 -