UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

SONIA FELDMAN,

Plaintiff(s),

v.

MARK ANTHONY SAWER, et al.,

Defendant(s).

Case No.2:24-CV-526  JCM (MDC)

ORDER

Presently before the court is plaintiff Sonia Feldman's superseding motion for default judgment.  (ECF No. 55).

**I.      Background**

Mark Sawyer represented to Sonia Feldman that he would be able to more than double her money by investing it in a "bridge loan program."  This was a lie.  (ECF No. 37 at 13).  And, unfortunately, one Ms. Feldman fell for to the tune of $1,176,337.13.  (*Id.* at 12).  Instead of using her money to make a loan to others, Mr. Sawyer used it for personal expenses and to relieve debts he owed others.  (ECF No. 55 at 3); (ECF No. 37, Exs. L, M, U).

Ms. Feldman initially invested $10,000 in Mr. Sawyer's purported bridge loan program in exchange for Mr. Sawyer's execution of a promissory note stating that he would pay Ms. Feldman back within 95 days.  (ECF No. 37, Ex. U).  She made a second investment of $1,166,337.13, and Mr. Sawyer executed a corresponding promissory note payable in 95 days.  (*Id.*).  Rather than paying her back at the end of each period, Mr. Sawyer repeatedly convinced Ms. Feldman to roll over her promissory notes, all the while withholding the fact that he would never repay her.  (ECF

No. 37 at 13).

Mr. Sawyer was not alone in this endeavor.  Mark and Jennifer Sawyer ran this purported bridge loan program together, which Ms. Feldman alleges—and the Sawyers admitted—was a Ponzi scheme.  (*Id.*).[1]  It is undisputed that Mrs. Sawyer assisted her husband in this scheme so that she could benefit from Ms. Feldman's financial investment with her husband.  (*Id.*).

Ms. Feldman alleges that in early summer 2023, she asked for $200,000 of her money back.  (ECF No. 12 ¶ 26).  No payments were made, even after repeated demands.  Indeed, it appears the Sawyers went to great lengths to avoid paying her back.  For example, the Sawyers admit that they set up defendant MJS Nevada trust—at a time when they were insolvent—so that they could hide their assets from Ms. Feldman in case she sued Mr. Sawyer to recover the money he had agreed to pay her.  (*Id.* at 12).

Ms. Feldman filed a lawsuit against Mr. Sawyer in the Los Angeles Superior court in October 2023, seeking to recover her investment funds from Sawyer.  However, Ms. Feldman claims that she later realized Mr. Sawyer lived in Las Vegas, not California, and filed in this court to recover her inheritance monies on the legal theories of unjust enrichment and fraudulent conveyance.  The complaint was filed against Mr. and Ms. Sawyer, and their various corporate entities that Ms. Feldman asserts the Sawyers diverted funds into.

On December 4, 2024, defendants' counsel moved to withdraw as counsel in this matter.  (ECF No. 31).  The court granted the motion on December 20, 2024, and instructed the corporate defendants to file a notice of appearance of new counsel on or before February 20, 2025.  (ECF

---

[1] Ms. Feldman is not the only individual claiming Mr. Sawyer failed to pay back a loan made through his supposed bridge loan program.  Other individuals have asserted claims for breach of contract and fraud arising out of the program.  And, as noted above, Mr. Sawyer admitted that he used Ms. Feldman's money, at least in part, to pay off debts to others.  It is reasonable to infer that he did the same with money he obtained from others, supporting Ms. Feldman's allegations of a Ponzi scheme.

No. 36).  The corporate defendants failed to comply with the court's order to retain new counsel by the deadline.

Thereafter, Ms. Feldman filed a motion for summary judgment, which was never opposed. (ECF No. 37).  After five months passed without word from the corporate defendants, Ms. Feldman filed a combined motion for default judgment and entry of clerk's default.  (ECF No. 49).

Because entry of default is required before the court may grant default judgment, the court ordered Ms. Feldman to move separately for clerk's entry of default.  (ECF Nos. 50, 51).  Ms. Feldman moved for clerk's entry of default on January 27, 2026, and default was entered on February 27, 2026.  (ECF No. 54).  Ms. Feldman filed a superseding motion for default judgment on March 24, 2026, which is now before the court.  (ECF No. 55).

## II.    Legal Standard

To obtain default judgment a party must follow a two-step process governed by FRCP 55. *See Eitel v. McCool*, 782 1470, 1471 (9th Cir. 1986).  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a). Federal Rule of Civil Procedure 55(b)(2) provides that "a court may enter a default judgment after the party seeking default applies to the clerk of the court as required by subsection (a) of this rule." Fed. R. Civ. P. 55(b)(2).

The choice whether to enter a default judgment lies within the discretion of the trial court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  *Eitel v. McCool* laid out the following factors that a district court might consider when exercising its discretion as to the entry of default judgment: (1) the possibility of prejudice to the plaintiff, (2) the merits of a plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the

possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  782 F.2d 1470, 1471–72 (9th Cir. 1896).

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).  Entry of a default judgment for money is appropriate without a hearing if "the amount claimed is a liquidated sum or capable of mathematical calculation."  *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981).  "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).

**III.    Discussion**

The *Eitel* factors overwhelmingly support granting default judgment in favor of Ms. Feldman.

As to the first factor, Ms. Feldman makes a convincing argument that she will be prejudiced if this court does not grant default judgment.  She has already secured a judgment in a California court against defendant Mark Sawyer for breach of contract, thus establishing that he has not returned $1,176,337.13 of her inheritance.  (ECF No. 37, Ex. U).  Ms. Feldman's concern is that she cannot reach assets that the Sawyers allegedly funneled through the Nevada corporate entity defendants.  Thus, while the California adjudication confirms the legitimacy of her claims, it provides her no relief.

Mr. Sawyer, his wife, and their corporate entities have ceased litigating in this case for over two years and show no indication of making any appearances.  Unless default judgment is granted, Ms. Feldman will have no recourse against the defendants.  This factor weighs in favor of entry of

default judgment.

The second and third *Eitel* factors favor default judgment if the plaintiff states a claim upon which relief can be granted in accordance with Rule 8(a). *Nike, Inc. v. Fujian Juialimeng Shoes Co.*, 2019 U.S. Dist. 55583, at \*5 (D. Nev. Mar. 6, 2019) (citing *Eitel*, 782 F.2d at 1471; *PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)). Upon default, the court accepts as true the factual allegations of the party's complaint, except as to damages. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)). Additionally, in the context of summary judgment motions, if a party fails to properly address another party's assertion of fact, the court may consider the fact undisputed for the purposes of the motion. *See* Fed. R. Civ. P. 56(e).

Ms. Feldman's claims for unjust enrichment and fraudulent conveyance against the defendants are meritorious and sufficiently alleged in the amended complaint as to each of the defendants. There is no genuine dispute that Mark and Jennifer Sawyer were insolvent and running a Ponzi scheme, and that they formed the MJS Nevada trust to shield their assets from Ms. Feldman. (ECF No. 37 at 12). Ms. Feldman's unrebutted sworn declarations and bank records support her allegation that her inheritance was transferred into accounts tied to the corporate defendants. (ECF No. 55 at 6); *see* (ECF No. 37); Fed. R. Civ. P. 56(e). It is also uncontested that the Sawyers used Ms. Feldman's money for purposes other than as a bridge loan. This factor supports entering default judgment.

Default judgment is also warranted if the money at stake in the action is proportionate to the seriousness of the conduct. *Servfaces Gmbh v. Truong*, No. 2:19-cv-1906-APG-DJA, 2020 U.S. Dist. LEXIS 28692, at \*6 (D. Nev. Feb. 20, 2020). Here, the sum of money at stake (over $1.1 million) is large, but it is neither arbitrary nor speculative. Ms. Feldman seeks recovery of

the amount she invested with Mr. Sawyer (plus interest, costs, and attorney's fees). (ECF No. 49 at 8). The fourth factor supports default judgment.

As to the fifth factor, there is no possibility of genuine dispute because Ms. Feldman's motion for summary judgment is unopposed, the allegations in the complaint may be taken as true for the purposes of default judgment, and defendants have not appeared in this matter for over two years. *See Geddes*, 559 F.2d at 560; Fed. R. Civ. P. 56(e).

Defendants' default was not due to excusable neglect. First, the corporate defendants were on notice by the court of the requirement to obtain new licensed counsel. (*See* ECF No. 36). Business entities cannot proceed pro se in federal court. They must retain licensed counsel during the pendency of the litigation. *See Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 217 (1993). When a corporation's counsel withdraws, it must seek new counsel. *See id.* If the corporation fails to do so, default judgment is "perfectly appropriate." *United States v. High County Broadcasting Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993). The corporate defendants in this case remain unrepresented in violation of the court's order.

Second, while Mark and Jennifer Sawyer need not retain new counsel, they have not litigated in this case in over two years, including failing to file oppositions to Ms. Feldman's motion for summary judgment or combined motion for default judgment and clerk's entry of default. Thus, this factor also weighs in favor of default judgment.

Although courts favor deciding cases on the merits, this case is an exception to the general rule. Defendants abandoned litigation of this case in what appears to be an attempt to avoid facing liability. Denying default judgment would effectively allow the defendants to keep this action in limbo, in perpetuity, denying Ms. Feldman the relief she seeks. This factor supports granting default judgment.

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff Sonia Feldman's motion for default judgment (ECF No. 55) be, and the same hereby is, GRANTED.   Default judgment is entered against ALL DEFENDANTS and in favor of Sonia Feldman in the amount of $1,176,337.13, plus statutory interest, costs, and attorneys' fees.  Plaintiff's counsel must submit a motion for costs and attorney's fees within 21 days of this order.

IT IS FURTHER ORDERED that plaintiff Sonia Feldman's motion for summary judgment (ECF No. 37) be, and the same hereby is, DENIED as moot.

IT IS ALSO ORDERED that plaintiff Sonia Feldman's combined motion for default judgment and entry of clerk's default (ECF No. 49) be DENIED.

DATED March 25, 2026.


_____
UNITED STATES DISTRICT JUDGE